Judge: The Honorable Brian D. Lynch
Chapter: 11
Hearing Location: Tacoma, Room I
Hearing Date: December 15, 2010
Hearing Time: 9:00 a.m.
Response Date: December 8, 2010

# IN THE UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

In Re:

HAWKS PRAIRIE INVESTMENT LLC,

                Debtor.

Taxpayer Identification No. 20-2657001

<u>Debtor's Address</u>
1411 State Ave. NE, Suite 100
Olympia, WA  98506-4467

BANKRUPTCY NO. 10-46635

**DEBTOR'S DISCLOSURE STATEMENT**

      <u>IMPORTANT</u>.  THIS DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT FOR DISSEMINATION TO CREDITORS AND PARTIES IN INTEREST, AND CONTAINS INFORMATION WHICH MAY BEAR UPON YOUR DECISION TO VOTE TO ACCEPT OR REJECT THE DEBTOR'S PLAN OF REORGANIZATION PROPOSED BY HAWKS PRAIRIE INVESTMENT LLC. THE INFORMATION PROVIDED IN THIS DISCLOSURE STATEMENT IS BASED ON THE DEBTOR'S BEST INFORMATION AND BELIEF.  PLEASE READ THIS DISCLOSURE STATEMENT WITH CARE.  BE AWARE, HOWEVER, THAT THE DEBTOR'S PLAN OF REORGANIZATION CONTROLS IF THERE IS A CONFLICT OR INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE DEBTOR'S PLAN OF REORGANIZATION.

DEBTOR'S DISCLOSURE STATEMENT - 1

632215.01



Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

# I. INTRODUCTION

On August 13, 2010, Hawks Prairie Investment LLC ("Hawks Prairie") filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Western District of Washington at Tacoma ("Bankruptcy Court"). Hawks Prairie's bankruptcy case is pending in the Bankruptcy Court under Bankruptcy No. 10-46635. Hawks Prairie is continuing to operate its business and manage its affairs as a debtor-in-possession.

This Disclosure Statement contains information regarding Hawks Prairie and its proposed Debtor's Plan of Reorganization ("Plan"). Pursuant to 11 U.S.C. § 1125, a copy of this Disclosure Statement and the Plan are being distributed to you to enable you to make an informed judgment about the Plan. The Bankruptcy Court has reviewed this Disclosure Statement and, after notice and a hearing, approved this Disclosure Statement as containing adequate information to fulfill that purpose. The Bankruptcy Court's approval of this Disclosure Statement, however, does not constitute a recommendation or endorsement of the Plan.

This Disclosure Statement has been prepared to disclose information which in Hawks Prairie's opinion is material, important and necessary to evaluate the Plan. The information contained in this Disclosure Statement is intended solely for that purpose and should not be relied upon by anyone for any other purpose. No representation concerning Hawks Prairie or the Plan is authorized by Hawks Prairie other than as set forth in this Disclosure Statement.

A creditor or equity security holder may vote to accept or reject the Plan by completing the ballot provided with this Disclosure Statement and sending the original ballot to:

> Ryan, Swanson & Cleveland, PLLC
> 1201 Third Avenue, Suite 3400
> Seattle, Washington 98101-3034
> Attention: Anne K. Hermes

DEBTOR'S DISCLOSURE STATEMENT - 2

632215.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

The Bankruptcy Court has fixed January ___, 2011 at 5:00 p.m. as the deadline for ballots to be received by Ryan, Swanson & Cleveland, PLLC. No ballot received after the deadline will be counted. If the Plan is confirmed by the Bankruptcy Court, it will bind all creditors and equity security holders irrespective of their individual vote.

The hearing to consider confirmation of the Plan will be held before the Honorable Brian D. Lynch, United States Bankruptcy Judge, United States Courthouse, Room I, 1717 Pacific Avenue, Tacoma, Washington 98402 on January __, 2011 at 9:00 a.m. The Bankruptcy Court will confirm the Plan if it meets the requirements contained in the Bankruptcy Code. A more detailed discussion of those requirements appears on pages 9 through 11 of this Disclosure Statement under the section entitled "Confirmation of the Plan."

## II. RECOMMENDATION

Hawks Prairie believes the Plan provides the best feasible recoveries to creditors and, therefore, urges you to vote to accept the Plan and to timely return your completed ballot so that your vote will be counted.

## III. ORGANIZATION AND HISTORY OF HAWKS PRAIRIE

Hawks Prairie is a Washington limited liability company. Tri M. Vo ("Vo") is the manager of Hawks Prairie. Vo also indirectly owns the equity interests in Hawks Prairie through two other limited liability companies, Pacific Investment Group LLC and GBS II Investment LLC.

Hawks Prairie owns approximately 337 acres of undeveloped real property in Lacey, Washington ("Property"). The Property is expected to be developed as "Lacey Gateway," with a mix of commercial and residential uses. The City of Lacey, the State of Washington and the local community have been supportive of the development. Cabela's, a major national store, has opened to anchor the development, an environmental impact statement has been completed and most of the entitlement work for Phase I has been completed. Phase I of the development would consist of 1,200,000 square feet of office and retail space and 500

DEBTOR'S DISCLOSURE STATEMENT - 3

632215.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

residential units.

Substantial investment has been made with respect to the development of the Property that was necessary to land Cabela's as an anchor tenant. The infrastructure, including sewer, water, power and roads, is now available on location as a result of investment by the City of Lacey (approximately $9,900,000), the State of Washington (approximately $10,000,000) and Hawks Prairie (approximately $29,000,000). In addition, another $14,000,000 may be made available to the development from the Local Revitalization Fund.

The development of the Property was partially financed with money Hawks Prairie borrowed from HomeStreet Bank ("HomeStreet"). HomeStreet is owed approximately $32,900,000. HomeStreet has three deeds of trust against the Property to secure its claims. Hawks Prairie has alleged that approximately $10,300,000 of HomeStreet's secured claim may be avoidable as a fraudulent transfer. HomeStreet disputes the fraudulent transfer claim.

The Property is also encumbered by a deed of trust in favor of Howard Talbitzer and Anthony Glavin ("T/G") securing a claim of approximately $12,800,000. This deed of trust arises out of an agreement between Vo and T/G pursuant to which Vo bought T/G's ownership interests in certain limited liability companies. Hawks Prairie has alleged that T/G's secured claim may be avoidable as a fraudulent transfer. T/G disputes the fraudulent transfer claim.

The secured claims against the Property are summarized below:

| Position | Claimant | Amount | Potentially Avoidable |
|---|---|---|---|
| 1st | Thurston County (taxes) | $950,000 | No |
| 2nd | HomeStreet | $13,950,000 | No |
| 3rd | HomeStreet | $2,400,000 | No |
| 4th | T/G | $12,800,000 | Yes |
| 5th | HomeStreet | $16,550,000 | Yes, up to $10,300,000 |

Hawks Prairie's obligations to HomeStreet matured and HomeStreet commenced a non-judicial foreclosure proceeding. For quite a few months, Hawks Prairie, HomeStreet,

DEBTOR'S DISCLOSURE STATEMENT - 4

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

T/G and other parties negotiated a variety of potential restructuring transactions with respect to the Property. A fairly comprehensive memorandum of understanding was executed as of July 22, 2010. The transactions contemplated by the memorandum of understanding could not be finalized and, despite ongoing negotiations, HomeStreet elected not to further continue a non-judicial foreclosure sale scheduled for August 13, 2010.

On August 13, 2010, Hawks Prairie filed this case to stop HomeStreet's non-judicial foreclosure sale.

## IV. POST PETITION EVENTS

Since the Petition Date, Hawks Prairie's business activity has been limited primarily to efforts to restructure its debt, raise new capital and/or sell the Property. Other than the Property, Hawks Prairie has no significant assets other than the potential fraudulent transfer claims described above. In response to a motion filed by HomeStreet, the Bankruptcy Court entered an order determining that this is a single asset real estate case.

HomeStreet and T/G each filed a motion for relief from stay seeking permission to foreclose on the Property. If those motions are granted, it is very unlikely unsecured creditors will receive anything on account of their claims. Hawks Prairie opposed these motions and a hearing was held on November 10, 2010. One of the primary issues at the hearing was the value of the Property. Based on a March 2010 appraisal, HomeStreet and T/G took the position the value of the Property was about $31,900,000. Based on earlier appraisals and Vo's experience, Hawks Prairie took the position the value of the Property was closer to $70,000,000. The Bankruptcy Court did not rule on value and continued the motions for an evidentiary hearing on December 10, 2010.

## V. CURRENT FINANCIAL CONDITION

Hawks Prairie's financial condition has remained relatively stable since the Petition Date. Hawks Prairie has not incurred any material business debt although real property taxes and interest on secured claims continue to accrue. The only other significant obligations

DEBTOR'S DISCLOSURE STATEMENT - 5

632215.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

accruing since the Petition Date are the fees and costs of the professionals employed by Hawks Prairie in its bankruptcy case.

Additional information regarding Hawks Prairie's financial performance since the Petition Date is available in monthly reports that are on file with the Bankruptcy Court and are of public record.

### VI. SUMMARY OF PLAN OF REORGANIZATION

The Plan has been provided to all of Hawks Prairie's known creditors, potential creditors and equity security holders. The Plan should be read carefully and independently of this Disclosure Statement. The following summary of the Plan is intended to provide a context for understanding the remainder of this Disclosure Statement.

At its core, the Plan provides for full payment to all creditors by August 15, 2012. The funds are expected to be raised through a transaction in the form of a sale of the Property or the infusion of new capital in exchange for equity ("Alternative Transaction"). If an Alternative Transaction cannot be structured, the Property will be sold at auction in 2012. If such an auction does not result in a price sufficient to pay creditors, HomeStreet and T/G will be allowed to foreclose on the Property and creditors can pursue their state law remedies.

The Plan also leaves open the possibility of Hawks Prairie, HomeStreet, T/G, Vo and J. Scott Griffin Jr. ("Griffin") agreeing to a restructuring transaction with respect to the Property ("Agreed Transaction"). Griffin is relevant because he has a judgment against Vo and is seeking to take over Vo's ownership interests in a number of companies including Hawks Prairie. If there is an Agreed Transaction, unsecured creditors are entitled to be paid in full by August 15, 2012.

### VII. ESTIMATION OF CLAIMS PARTICIPATING IN THE PLAN

Under the Bankruptcy Code, a creditor in a Chapter 11 bankruptcy case may participate in an estate if either: (1) the creditor has timely filed a proof of claim with the Bankruptcy Court, or (2) the debt owed to the creditor is listed on the debtor's bankruptcy

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

schedules as not being unliquidated, contingent or disputed. Below is Hawks Prairie's best estimation of the amount of claims in each class. Creditors should be aware, however, that the actual allowed claims in each class may materially differ from Hawks Prairie's estimate. Nevertheless, the estimates are provided to give creditors as good an indication as currently possible as to the probable claims.

| Class No. | Description | Estimate | Explanation |
|---|---|---|---|
| None | Administrative Expenses | $60,000 | Hawks Prairie's estimate of unpaid post-petition professional fees as of October 31, 2010 ($18,000) and Hawks Prairie's estimate of additional professional fees until the effective date of the Plan ($42,000). |
| 1 | Property Taxes | $950,000 | Public records through December 31, 2010 |
| 2 | HomeStreet | $33,000,000 | HomeStreet's estimate as of September 30, 2010 |
| 3 | T/G | $12,750,000 | T/G's promissory note as of January 12, 2009 |
| 4 | Unsecured Claims | $1,400,000 | Hawks Prairie's bankruptcy schedules |

Creditors should be aware that Hawks Prairie may dispute the amount, priority and/or secured portion of some claims and file objections to those claims. Thus, the claims participating in the Plan may be augmented or reduced through litigation, compromise, or other developments subsequent to the date of this Disclosure Statement and confirmation of the Plan.

## VIII. COMPARISON OF PLAN TO CHAPTER 7 LIQUIDATION

If the Bankruptcy Court were to find at the hearing on confirmation of the Plan that creditors will receive or retain under the Plan property of a value as of the effective date of the Plan that is not less than the amount that such creditors would receive or retain if Hawks Prairie were liquidated under 11 U.S.C. Chapter 7 as of such date, then the requirement set forth in 11 U.S.C. § 1129(a)(7)(A)(ii) will be satisfied. This requirement must be satisfied

DEBTOR'S DISCLOSURE STATEMENT - 7

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

with respect to a class of claims only if less than all holders of claims or interests in such class have accepted the Plan.

In a liquidation under Chapter 7, a trustee would be appointed to liquidate Hawks Prairie's assets. A liquidation estate would consist primarily of the Property. Since this is a single asset real estate case, HomeStreet and T/G would likely be granted immediate relief from stay to foreclose on the Property. Thus, it is unlikely a trustee would be able to sell the Property. Instead, HomeStreet and T/G would likely foreclose. Creditors other than HomeStreet and T/G would lose the benefit of the Property. Thus, creditors other than HomeStreet and perhaps T/G are unlikely to receive anything in a Chapter 7 case.

By comparison, under the Plan, creditors are expected to be paid in full.

Hawks Prairie believes that all creditors will receive or retain under the Plan on account of their claims, property having a value that is not less than the amount that such creditors would receive or retain if Hawks Prairie was liquidated under 11 U.S.C. Chapter 7.

## IX. RISKS

The successful implementation of the Plan is contingent upon many assumptions, some or all of which could fail to meet expectations and preclude the Plan from being confirmed or producing the anticipated results. Some of the more significant risks are as follows:

1. There is no guarantee the Plan will be confirmed. If it is not, HomeStreet and/or T/G will likely foreclose on the Property.

2. There is no guarantee that Hawks Prairie will successfully conclude an Agreed Transaction or an Alternative Transaction.

3. There is no guarantee that if Hawks Prairie is unable to conclude an Agreed Transaction or an Alternative Transaction, Hawks Prairie will be able to refinance or sell the Property by August 15, 2012. There is an added degree of uncertainty created by the current state of the U.S. economy, the real estate market and the banking industry.

DEBTOR'S DISCLOSURE STATEMENT - 8

632215.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

4. Hawks Prairie has not done any investigation as to the tax consequences for creditors under the Plan. There may be adverse tax consequences for creditors, and creditors with such concerns should consult their own tax advisors.

## X. CONFIRMATION OF THE PLAN

**A.  Voting Procedures.**

A ballot to be used for voting on the Plan accompanies this Disclosure Statement and the Plan. Holders of claims or interests should read the instructions carefully, complete, date and sign the ballot, and send it to the indicated address. To be counted, your ballot must be received at the indicated address no later than January __, 2011 at 5:00 p.m. Failure to vote or a vote to reject the Plan will not affect the treatment to be accorded a claim if the Plan is nevertheless confirmed.

If more than one-half (1/2) in number of claimants voting and at least two-thirds (2/3) in amount of the allowed claims of such claimants in each of Classes 1, 2, 3 and 4 vote to accept the Plan, such classes will be deemed to have accepted the Plan. For purposes of determining whether a class of claims has accepted or rejected the Plan, only the votes of those who have timely returned their ballots will be considered. If a voting class does not accept the Plan, Hawks Prairie will seek confirmation under 11 U.S.C. § 1129(b). This section generally requires that the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan.

**B.  Hearing on Confirmation.**

The hearing on confirmation of the Plan has been set for January __, 2011 at 9:00 a.m. before the Honorable Brian D. Lynch, United States Bankruptcy Judge, United States Courthouse, Room I, 1717 Pacific Avenue, Tacoma, Washington 98402. The Bankruptcy Court shall confirm the Plan at the hearing only if the requirements of 11 U.S.C. § 1129 are satisfied.

DEBTOR'S DISCLOSURE STATEMENT - 9

632215.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

C. **Comparison to Chapter 7.**

To satisfy one of the requirements of 11 U.S.C. § 1129, Hawks Prairie must establish that with respect to each class, each holder of a claim or interest in that class has accepted the Plan or will receive or retain under the Plan on account of such claim or interest property of a value that is not less than the amount that such holder would receive if Hawks Prairie were liquidated under 11 U.S.C. Chapter 7. As discussed on pages 7 and 8 of this Disclosure Statement under the section entitled "Comparison of Plan to Chapter 7 Liquidation," Hawks Prairie believes that the Plan satisfies this test. Hawks Prairie anticipates the Bankruptcy Court will make such a determination at the hearing on confirmation.

D. **Feasibility.**

The Plan provides for the closing of an Agreed Transaction, an Alternative Transaction or a refinance or sale of the Property by August 15, 2012. THA believes the requisite Agreed Transaction, Alternative Transaction, refinance or sale is likely to be achieved. If that does not happen, however, Hawks Prairie believes the value of the Property will still exceed the amounts owed to HomeStreet and T/G. As such, Hawks Prairie believes the Plan is feasible as defined by Bankruptcy Code requirements.

E. **Treatment of Dissenting Classes of Creditors.**

The Bankruptcy Code requires the Bankruptcy Court to find that the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan. Upon such a finding, the Bankruptcy Court may confirm the Plan despite the objections of a dissenting class.

F. **Effect of Confirmation.**

The Plan shall bind Hawks Prairie and all other parties in interest, including any creditor, whether such creditor is impaired under the Plan and whether such creditor has accepted the Plan.

DEBTOR'S DISCLOSURE STATEMENT - 10

632215.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

**G. Consequences of Failure to Confirm the Plan.**

If the requirements for confirmation of the Plan are not satisfied, Hawks Prairie intends to amend the Plan in a manner that makes confirmation possible. If the Plan as amended cannot be confirmed, it would likely be necessary to dismiss the case or convert the case to Chapter 7.

**H. Disclosures Required by the Bankruptcy Code.**

The Bankruptcy Code requires disclosure of certain information:

1. There are no payments or promises of any kind specified in 11 U.S.C. § 1129(a)(4), including payments to attorneys or accountants, that will not be subject to approval by the Bankruptcy Court.

2. Management of Hawks Prairie's business will remain the general responsibility of Vo. Vo has more than 20 years of experience in real estate development activities and is intimately familiar with the Property. Hawks Prairie believes Vo is qualified and his management of Hawks Prairie's business is consistent with the interests of creditors and with public policy as required by 11 U.S.C. § 1129(a)(5). Vo will not be paid a salary by Hawks Prairie at least until after the closing of an Agreed Transaction, an Alternative Transaction or a sale of the Property.

DATED this 10th day of November, 2010.

HAWKS PRAIRIE INVESTMENT LLC

By  */s/ Tri M. Vo*
    Tri M. Vo
    Manager

SUBMITTED to the Court this 11th day of November, 2010.

RYAN, SWANSON & CLEVELAND, PLLC

By  */s/ Timothy W. Dore*
    Timothy W. Dore, WSBA No. 17131
    Attorneys for Hawks Prairie

DEBTOR'S DISCLOSURE STATEMENT - 11

632215.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359