The Honorable Brian D. Lynch
Chapter: 11
Hearing Date:
Hearing Time:
Hearing Location: Tacoma, Courtroom I
Response Date:

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| In Re:<br><br>HAWKS PRAIRIE INVESTMENT, LLC<br><br>Debtor. | No. 10-46635-BDL<br><br>DEBTOR AND HOMESTREET BANK'S MOTION 1) SCHEDULING A HEARING TO APPROVE PURCHASE AND SALE OF DEBTOR'S COMMERCIAL PROPERTY FREE AND CLEAR 2) APPROVE BIDDING PROCEDURES AND EXPENSE REIMBURSEMENT FEE AND 3) APPROVING FORM AND MANNER OF NOTICE |

Hawks Prairie Investment, LLC (the "Debtor") and HomeStreet Bank ("HomeStreet") together as the "Moving Parties," submit this motion to: 1) schedule a hearing to approve the sale of the commercial real property assets of the Debtor free and clear of all liens, claims, interests and encumbrances pursuant to the Bankruptcy Code §363 and the confirmed Debtor's Amended Plan; (2) approve the Bidding Procedures for an auction to allow competing bids; (3) approve expense reimbursement fee; and (4) approve form and scope of notice of the Bidding Procedures, Auction and hearing to approve the Sale free and clear.

This motion (the "Sale Motion") is based on the files and records herein and on the accompanying Declaration of Craig Kennedy (the "Kennedy Decl.") and the Exhibit(s) attached thereto.

MOTION TO APPROVE BIDDING
PROCEDURES AND SCHEDULE -1

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

51141491.1

# I. FACTUAL BACKGROUND

## 1.1 The Debtor and Its Business.

On August 13, 2010 (the "Petition Date"), the Debtor commenced this chapter 11 case by filing a voluntary petition under chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its affairs as a debtor-in-possession under 11 U.S.C. §1107 and 1108.

Hawks Prairie Investment, LLC is a Washington limited liability company which was organized to purchase and develop real estate commonly known as Lacey Gateway, approximately 373.69 acres of commercial and residential zoned land located just north of I-5 and west of Marvin Road in Lacey, Thurston County, Washington. The site was acquired in 2005 for $29,000,000 of which $15,000,000 was paid in cash and the balance secured by a first lien Deed of Trust to HomeStreet. Part of the land was developed and sold to Cabela's, a large national retail outdoor outfitter in 2007. Until recently, Tri Vo and his company, Pacific Investment Group, LLC, were the remaining sole owners of the membership interests in the Debtor. Tri Vo's interests were pledged to J. Scott Griffin ("Griffin"), who subsequently obtained the Limited Liability Company interests through a UCC foreclosure in December 2010. Griffin is currently the sole owner of the two Limited Liability Companys owning 100% of the membership of the Debtor.

While earlier appraisals were higher, after the downturn in the economy in March 2010, the Debtor's real property appraised for $26,720,000.00 "as is" market value with no Washington State Local Revitalization Financing (the "WASLRF") and $33,420,000.00 with the WASLRF. There is indication that the WASLRF is approved and available for the Property.

The Lacey Gateway real property is the sole asset of the Debtor.

# II. EVENTS LEADING TO THE BANKRUPTCY.

In 2010, the Debtor was in default with its secured debt and on the eve of the Trustee's Sale scheduled for 11 a.m. on Friday, August 13, 2010, the Debtor filed bankruptcy so it could

MOTION TO APPROVE BIDDING
PROCEDURES AND SCHEDULE -2

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400 FAX (206) 447-9700

51141491.1

obtain relief from its financial obligations while it evaluated various options including reorganization or sale of its assets.

### III. EVENTS AFTER FILING.

#### 3.1 Settlement Approval.

On December 17, 2010, the Court approved a settlement agreement (the "Settlement Agreement") between HomeStreet Bank and the Debtor. The Settlement Agreement provided for a forbearance period until March 15, 2011 of the scheduled foreclosure sales to allow the Debtor to find and close a sale of the property. This forbearance period has been extended.

#### 3.2 Adversary Proceeding.

On December 20, 2010, consistent with the Settlement Agreement, the Debtor and HomeStreet commenced an adversary proceeding contending that the third lien held by creditors Howard Talbitzer and Anthony Glavin and their assignees were subject to avoidance. This adversary proceeding placing the validity of the third lien in bona fide dispute is pending. As recognized by the Court, if the third lien is determined to be invalid in whole or in part, the benefit of that determination flows to the estate under 11 U.S.C. §551.

#### 3.3 Plan Confirmation.

On March 4, 2011, the Court held a hearing and confirmed the Debtor's Amended Plan, which provided for a sale of the Debtor's property free and clear of liens and encumbrances as provided for under the provisions of 11 U.S.C. §363. Now that the Debtor has a viable offer to purchase its real property, it will be filing a final order confirming its reorganization plan.

The Debtor has filed or will soon file an amendment to the Debtor's Plan which extends the "Drop Dead Date" to September 15, 2011 to facilitate this sale and the marketing and sale of the residential parcels.

#### 3.4 Purchase and Sale Agreement.

The Debtor has now entered into a proposed sale to Eclipse Development Group, LLC or its designee, assignee or nominee ("Purchaser") of the commercial parcels of the real estate of

MOTION TO APPROVE BIDDING
PROCEDURES AND SCHEDULE -3

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

51141491.1

Debtor for the aggregate consideration of Twenty Seven Million Dollars ($27,000,000). ("Purchase Price").[1] The Purchase and Sale Agreement ("PSA") is subject to Court approval. A copy of the PSA is attached as Exhibit A to the Kennedy Decl.

Based on the Debtor's pre- and post-petition efforts, and the recent joint efforts by HomeStreet, the Moving Parties are confident that the Purchase Price is fair and reasonable, and the highest and best offer received to date. Current financial and cash flow issues dictate that a sale be consummated quickly to ensure the value of the Debtor's property is preserved for the estate.

### 3.5 Summary of Terms of Proposed Sale.

Following is a summary of some of the material terms of the PSA:

#### A. ASSETS TO BE PURCHASED.

The assets to be purchased (the "Purchased Assets") include all of Debtor's rights, title, and interest in and to all of the Debtor's commercial real and associated personal property, in accordance with and with all of the protections afforded by section 363 of the Bankruptcy Code. The real property comprising the commercial property is more specifically defined as approximately 215 acres comprised of Parcels A and B as legally defined in the PSA.

#### B. CONDITIONS.

Consummation of the sale under the PSA is conditioned upon, *inter alia*, entry of the Overbid Procedures Order and Sale Free and Clear Order (as defined below), attached hereto as Exhibits A and B, respectively.

### IV. PROPOSED BIDDING PROCEDURES.

The Moving Parties and Purchaser recognize that the sale of the Purchased Assets as contemplated by the PSA is subject to receipt by the Debtor of higher and better offers. Therefore, the Moving Parties seek authority to implement certain procedures to ensure that the Debtor's estate will obtain the best return possible. Thus, the Moving Parties request that the

---

[1] The residential development property in Lacey Gateway remains on the market.

MOTION TO APPROVE BIDDING
PROCEDURES AND SCHEDULE -4

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

51141491.1

Court Order include approval of the Bidding Procedures to be employed with respect to the Proposed Sale.

The Bidding Procedures, Expense Reimbursement Fee and related bid protections are designed to compensate the Purchaser for its efforts to date and the concomitant benefits conferred upon the Debtor's estate, and to facilitate a full and fair process designed to maximize the value of the Purchased Assets for the benefit of Debtor's stakeholders.

### 4.1 Designation of Stalking Horse Bidder.

The Debtor has designated the PSA as the initial bid of Purchaser (the "Stalking Horse Bidder") as the stalking horse bid (the "Stalking Horse Bid"). As the Stalking Horse Bidder, Purchaser shall, under the Bidding Procedures be, upon the removal of all contingencies, entitled to an Expense Reimbursement Fee, and other Stalking Horse Bid protections discussed below. The obligation of Purchaser to perform under the PSA is conditioned on, among other things, the approval of the Bidding Procedures by the Bankruptcy Court including approval of the Expense Reimbursement Fee.

### 4.2 Auction Process.

A. AUCTION DATE.

An in-person auction shall be conducted on July 29, 2011 at 10:00 a.m. PST at the offices of Foster Pepper PLLC, at 1111 Third Avenue, Suite 3400, in Seattle, Washington. To be eligible to participate in the auction, all bidders (the "Competing Bidders") must prequalify.

B. QUALIFICATIONS TO BID.

Only Competing Bidders who prequalify shall be allowed to participate in the auction. Purchaser shall be a Competing Bidder for all purposes hereunder.

To become prequalified to bid, a Competing Bidder, shall, on or before five (5) business days prior to the Auction Date (the "Bid Deadline"), deliver a proposed Purchase and Sale Agreement (the "Competing PSA") to Arnold M. Willig of Hacker & Willig, Inc., P.S., 1501 Fourth Avenue, Suite 2150 in Seattle, Washington, email: arnie@hackerwillig.com, counsel for

MOTION TO APPROVE BIDDING
PROCEDURES AND SCHEDULE -5

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

51141491.1

the Debtor, and to Dillon E. Jackson of Foster Pepper, PLLC 1111 Third Avenue, Suite 3400 in Seattle, Washington, email: jackd@foster.com, counsel for the HomeStreet; in the same form as in the PSA attached hereto as Exhibit A to the Kennedy Decl.. Any Competing PSA shall be red lined with any changes or deletions from the Purchaser's PSA.

In addition, the Competing PSA shall:

(a) be submitted by an entity financially qualified to consummate the Competing PSA on a timely basis and includes such financial and other information that will allow the Debtor to make a reasonable determination as to the Competing Bidder's financial and other capabilities to consummate the transactions contemplated;

(b) be subject only to entry of a Court Order approving the proposed transaction with no other contingencies of any sort, including without limitation any environmental, shareholder, financing or due diligence contingencies or conditions, and is made by an entity who has completed its due diligence review, and has waived all issues related thereto;

(c) be accompanied by an initial deposit (the "Initial Deposit") in the amount of Four Hundred Thousand Dollars ($400,000) made payable to the Debtor, by cashier's check or wire transfer (instructions to be provided upon request) which deposit shall become nonrefundable in the event that such bid is determined to be the "Winning Bid" (as defined below);

(d) acknowledge that the Competing Bidder will not request any Expense Reimbursement Fee, termination fee, expense reimbursement or similar type of payment.

**4.3 Qualified Overbidders.**

The Debtor shall make a determination regarding whether a bid is higher than the Purchaser's bid and therefore be a qualified overbid ("Qualified Overbid") and shall notify Competing Bidders whether their bids have been determined to be Qualified Overbids by no later than three (3) business days prior to the Auction Date and will provide further bid instructions at

MOTION TO APPROVE BIDDING
PROCEDURES AND SCHEDULE -6

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

51141491.1

that time. The Purchaser is deemed to have a Qualified Overbid and the PSA constitutes its Qualified Overbid for all purposes. The Debtor reserves the right to reject any bid other than the PSA (even if such bid constitutes a Qualified Overbid) if the Debtor determines, in its sole discretion, that a Qualified Overbid is inadequate or insufficient or the Debtor determines, in its sole discretion, that such Qualified Overbid is not in conformity with the requirements of the Bankruptcy Code or any related rules, the terms set forth in the Bidding Procedures or contrary to the best interests of the Debtor and its estate. Any Competing Bidder may seek the Court's review of the Debtor's determination to reject a Qualified Overbid; provided however, that any such challenge must be raised and concluded prior to the commencement of the Auction. The Debtor's determination and identification of the Qualified Overbid shall become irrevocable and unreviewable once the Auction has commenced.

**4.4 No Qualified Overbids.**

If no Qualified Overbids are received, the Debtor shall not hold an Auction and, instead, the Purchaser shall automatically be deemed the Winning Bidder and Debtor shall request at the Sale Hearing that the Court approve the PSA with the Purchaser.

**4.5 Opening Bid.**

The Stalking Horse Bid shall be considered the opening bid (the "Opening Bid") at the auction.

**4.6 Initial Overbid.**

The initial Qualified Overbid submitted by a Competing Bidder shall be at least Four Hundred Thousand Dollars ($400,000) higher than the Opening Bid. Subsequent bids shall be in increments of not less than One Hundred Thousand Dollars ($100,000) higher than the immediately preceding bid. No Qualified Overbids shall be accompanied by or conditioned on any additional terms or conditions to the proposed PSA other than price.

MOTION TO APPROVE BIDDING
PROCEDURES AND SCHEDULE -7

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

51141491.1

**4.7 Winning Bidder.**

The entity who submits the highest and best bid at the conclusion of the auction will be deemed the Winning Bidder (the "Winning Bidder"), taking into consideration, without limitation, the total cash amount to offered, the terms of the Qualified Overbid and the probability of the Competing Bidder closing the transaction. This will be deemed the "Winning Bid".

**4.8 Winning Bid.**

The Winning Bid, as determined by the Debtor in accordance with these Bid Procedures, shall promptly be submitted to the Bankruptcy Court for approval. By participating in the Auction, each Competing Bidder agrees that if it submitted the next highest successive bid, its bid will remain open for twenty (20) business days after entry of an order by the Bankruptcy Court approving the sale to the Winning Bidder. If the Winning Bidder fails to close the sale, the next highest bidder, and so on, will be approved to close under the Order for Sale Free and Clear.

**4.9 Closing.**

Unless otherwise extended by Court order, the transaction evidenced by the Winning Bid shall close within fifteen (15) days after entry of the Sale Order (except with respect to Purchaser, which is governed by the time set forth in the PSA), unless such order is stayed, (the "Closing Date") at which time the Winning Bidder shall pay the balance of the Winning Bid.

**4.10 Failure to Perform.**

In the event a Competing Bidder is declared to be the Winning Bidder and such bidder fails to timely perform any of its obligations as set forth above or in its PSA, such declared Winning Bidder shall forfeit its Initial Deposit without regard to Debtor's ultimate damages occasioned by such failure; and this shall constitute liquidated damages for non performance. For such limitation, all Competing Bidders herein waive any claim against the Purchased Assets and/or the estate and the Debtor shall retain the right to seek such relief including injunctive

MOTION TO APPROVE BIDDING
PROCEDURES AND SCHEDULE -8

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

51141491.1

relief to insure that the property remains immediately marketable for a sale to another purchaser immediately following such non-performance.

**4.11 Remedies if No Sale.**

In the event the Debtor is unable to obtain Court approval of the Sale Motion, the sole remedy of any Competing Bidder or Winning Bidder shall be the return of its Initial Deposit.

**4.12 Expense Reimbursement Fee.**

Only in the event the Initial Bid is not the Winning Bid, and the Debtor consummates a transaction with another Competing Bidder, then Purchaser shall submit an Expense Reimbursement Fee not greater than Three Hundred Thousand Dollars ($300,000.00) (the "Expense Reimbursement Fee") for expenses it incurred, which amount shall be paid within five (5) days after closing of the Sale. In the event Purchaser completes the sale of the Purchased Assets, Purchaser shall not be entitled to an Expense Reimbursement Fee.

The proposed Overbid Procedures are in the best interests of Debtor, its creditors, and its estate. The Overbid Procedures are designed to strike a balance between inviting competing bids and attracting an initial purchase agreement on the Purchased Assets. Thus, the Overbid Procedures are fair, reasonable and necessary to promote the highest and best sale price, without imposing undue obstacles to a competitive bidding process. Moreover, these bidding protections are in place in order to encourage the making of an initial offer subject to higher and/or better offers and ultimately to increase value for the bankruptcy estate.

Outside of the bankruptcy, context a private sale agreement can be reached and the purchaser can be confident that upon completion of due diligence, the transaction will be closed as contracted. As such, the risk of loss incurred in the efforts for due diligence in a non bankruptcy context are negligible. In the bankruptcy context a willing buyer ready to close faces the prospect of being subjected to competitive bidding and substantial financial loss. Thus, a Debtor in Possession or Trustee must devise a protection to the initial purchaser that will protect them against risk that only exists in the bankruptcy context. The means to encourage initial bids

MOTION TO APPROVE BIDDING
PROCEDURES AND SCHEDULE -9

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

51141491.1

is to provide for reimbursement of due diligence expenses, to include out of pocket expenses, professional fees as well as the estimates of the cost to the purchaser of the efforts of their principals and employees.

Thus, the Expense Reimbursement Fee is an integral part of Purchaser's offer. In fact, Purchaser's offer to purchase the Purchased Assets was – and remains – predicated and conditioned upon, *inter alia*, this Court's approval of the Expense Reimbursement Fee. As such, the assurance of the Expense Reimbursement Fee has "promoted more competitive bidding" because it induced an initial bid from Purchaser that otherwise might not have been made. Debtor submits that Purchaser should be reasonably reimbursed for its willingness to assume the role of the Stalking Horse Bidder as it is the only party ready and willing to serve in such role. Moreover, Purchaser's offer (including the Expense Reimbursement Fee) is also likely to serve as a catalyst to higher bids. Accordingly, the Debtor respectfully submits that this Court authorize and approve the Overbid Procedures, including the Expense Reimbursement Fee.

**4.13 Credit Bidding Prohibited.**

On the condition that the price for the Purchased Assets will not be less than $27 million, no lien creditor shall be permitted to credit bid. The secured creditors will be receiving the indubitable equivalent of their liens in any event. Further, the third lien of Talbitzer and Glavin is in bona fide dispute and the fourth lien of HomeStreet would appear to be at least in material part, be unsecured.

### V. LEGAL ANALYSIS.
**5.1 Best Interest of Estate and Creditors.**

By this Motion, the Debtor seeks approval of the Bidding Procedures for the Proposed Sale, free and clear of liens and encumbrances, as further detailed in the Bidding Procedures, subject to higher or better offers as it is in the best interests of the reorganized Debtor and the Creditors.

MOTION TO APPROVE BIDDING
PROCEDURES AND SCHEDULE -10

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400 FAX (206) 447-9700

51141491.1

**5.2 Basis for Sale.**

Bankruptcy Code §§363(b) and 1123 authorize a debtor to sell its assets outside of the ordinary course of business. Moving Parties believe that the record demonstrates that each of the following elements has been met: (1) a sound business reason exists for the proposed transaction; (2) the sale has been proposed in good faith; (3) the sale price is fair and reasonable; and (4) accurate and reasonable notice has been provided of the transaction. Here the proposed sale of the Purchased Assets pursuant to the PSA meets each of these four factors. In addition, the provision in the sale free and clear process and the Sale Order that holds proceeds of the sale for lien creditors in the order of their validity, priority and amount, protects the secured claimants as well as the interests of the estate.

**5.3 Sound Business Reasons.**

Based upon analysis of its existing and future business prospects, the Debtor has concluded that, given its current lack of funds and the absence of a source of capital for completion of the development of the real property, the Proposed Sale represents the only viable way to maximize the value of Debtor's estate for the benefit of all creditors and is consistent with the Debtor's confirmed reorganization plan.

The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. See, *e.g.*, *Four B Corp. v. Food Barn Stores, Inc*., 107 F.3d 558, 564-565 (8th Cir. 1997) (stating that, in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Integrated Res., Inc.,* 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the objective of bankruptcy rules and the duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate."). To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and are appropriate in context of bankruptcy sales. See *In re Integrated*

MOTION TO APPROVE BIDDING
PROCEDURES AND SCHEDULE -11

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

51141491.1

*Res., Inc*., 147 B.R. at 659 (sales procedures should "encourage bidding and … maximize the value of the debtor's assets").

Here, the proposed Bidding Procedures will allow and encourage interested parties to submit competing bids in an auction, thereby maximizing the value that the Debtor will receive for its assets. The Debtor believes that the auction process will allow it to determine the highest and best price possible for its assets. Without a prompt sale, the value of the Debtor as a going concern will significantly diminish because of the Debtor's cash flow difficulties. The Debtor believes that the Proposed Asset Sale will realize the most cash possible for Debtor's estate and creditors.

**5.4 Good Faith.**

"The requirement that a purchaser act in good faith….speaks to the integrity of his conduct in the course of the sale proceedings." *In re Abbotts Dairies of Pennsylvania, Inc*., 788 F.2d 143, 147 (3d Cir. 1986). "Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." Id.

Here, the PSA is the result of protracted arm's length negotiations between Debtor and Purchaser, and HomeStreet Bank and the Purchaser and their respective advisors. Purchaser thus is a good faith purchaser within the meaning of §363(m) of the Bankruptcy Code and should be entitled to all of the protections thereof.

Additionally, the sale of the Purchased Assets is subject to higher or better offers and the Debtor intends to provide notice of the Proposed Sale to all potential bidders. Finally, the Debtor has fully disclosed, and is requesting herein the Court's approval of, all the terms and conditions of the Proposed Sale and the Overbid Procedures. Accordingly, the sale of the Purchased Assets has been proposed, and is, in good faith.

MOTION TO APPROVE BIDDING
PROCEDURES AND SCHEDULE -12

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

51141491.1

**5.5 Fair and Reasonable Purchase Price.**

The Debtor, and HomeStreet after it was awarded authority to do so, sought offers from other potential purchasers prior to commencement of this Chapter 11 case and the filing of this Motion. Based upon those efforts, the Debtor believes that the Purchase Price is fair and reasonable, is the highest and best offer received to date for the Purchased Assets, and that the likely alternative to the proposed sale is a lender foreclosure, with a resulting loss of substantial potential value to the Debtor's estate.

Further, the Debtor submits that the payment of the Expense Reimbursement Fee in the event of another Winning Bid is fair and reasonable. Here, Purchaser has incurred and will continue to incur costs in continuing to make its offer available to the Debtor. Purchaser has already incurred substantial out-of-pocket legal fees and other costs in conducting its due diligence and negotiating the PSA. If another Competing Bidder appears and pays substantially more than Purchaser's offer, the Debtor will reap the benefits of Purchaser's first offer allowing for a higher subsequent offer. Indeed, courts have recognized that such fees are often a key component to significant sales conducted under §363 of the Bankruptcy Code. See *In re Integrated Res., Inc.*, 147 B.R. at 659-660 ("Expense reimbursement fees] are important tools to encourage bidding and maximize the value of the debtor's assets…In fact, because the directors of a corporation have a duty to encourage bidding, [expense reimbursement] fees can be necessary to discharge [such] duties to maximize values.")

The Ninth Circuit has yet to rule on the permissibility of "expense reimbursement fees." In the only case in the Ninth Circuit discussing expense reimbursement fees, *In re America West Airlines, Inc.*, 166 B.R. 908 (Bankr. Az. 1994), the court determined that, although the debtor had entered into an agreement, the court had "the jurisdiction and responsibility to determine if the proposed [expense reimbursement] fee, and the transaction as a whole, make economic sense for all concerned." Id. at 913. Most recently, the Third Circuit addressed the question of expense reimbursement fees in *In re Reliant Energy Channelview L.P.*, 2010 WL 143678,

MOTION TO APPROVE BIDDING
PROCEDURES AND SCHEDULE -13

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

51141491.1

reaffirming earlier decisions that a bidder's mere request for allowance of an expense reimbursement fee does not mean that the fee is recoverable as a condition of the bid, without proof that it was necessary to preserve the value of the estate.

Here, the Expense Reimbursement Fee reasonably relates to Purchaser's "risk, effort and expenses…", *In re Integrated Res., Inc.*, 147 B.R. at 662, was the result of arms-length negotiations, *In re 955 5th Avenue Associates*, 96 B.R. 24 (Bankr. S.D.N.Y. 1989), and encourages bidding. Id. at 28. Thus, the Expense Reimbursement Fee should be approved and allowed in the event of another Winning Bid.

### 5.6 The Requirements of 11 U.S.C. § 363(f) are met.

Section 363(f) of the Bankruptcy Code provides:

> (f) The Trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
> (1) applicable non-bankruptcy law permits sale of such property fee and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f) (West 2011)

Here, the requirements of §363(f) are met regarding the Purchased Assets to be sold by the Debtor, including intangible property rights. Finally, the absence of an objection by any purported holders of claims and interests in any property sold by the Debtor constitutes consent to the sale free and clear of such claims and interests.

### 5.7 Good Faith Purchaser Status Pursuant to 11 U.S.C. §363(m).

The Debtor requests that the Court find that the Winning Bidder is qualified to acquire the Purchased Assets and will do so in good faith within the meaning of the Bankruptcy Code §363(m). Specifically, §363(m) provides that "[t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not

MOTION TO APPROVE BIDDING
PROCEDURES AND SCHEDULE -14

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400 FAX (206) 447-9700

51141491.1

affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith…." 11 U.S.C. §363(m). Thus, pursuant to this section, "an appeal of a bankruptcy court's ruling on a foreclosure action [or sale] generally cannot affect the rights of a good faith purchaser of the foreclosed property." *Mann v. Alexander Dawson, Inc.*, 907 F.2d 923, 926 (9th Cir. 1990).

Here, the Purchaser needs assurance that the purchase of the Purchased Assets will not be subject to future claims by objecting creditors. Such assurance is required to generate the maximum purchase price for such assets at the Auction. Further, these circumstances warrant a finding of good faith on the part of Purchaser. Lack of good faith is generally determined by the existence of fraudulent conduct or insider dealing during the sale process. See, *In Exennium, Inc.*, 715 F.2d 1401 (9th Cir. 1983). Here, no fraudulent conduct or dealings have occurred in this case. Further, the Proposed Sale will be the product of an open auction subject to Court approval and to the extent necessary, arms-length, good faith negotiations between the Debtor and the Winning Bidder and, on the financing component, between the Purchaser and HomeStreet Bank.

## VI. PROPOSED NOTICE OF PROPOSED ASSET SALE AND PROCEDURES.

The Debtor is or will shortly be sending the Notice of the Auction and the Sale Motion and its supporting documents to all known creditors, taxing authorities, etc., via first class mail, as well as notifying parties via ECF. In addition, in order to ensure broad dissemination of the notice of the approved Bidding Procedures, upon entry of the Order approving same, the Debtor proposes to serve the Bidding Procedures Order with its proposed notice of auction and notice of sale (the "Notice of Sale") on all of the following:

     i. creditors, equity holders, prospective bidders (or their counsel) that are known to the Debtor and their advisors;

     ii. taxing authorities;

     iii. counsel to the Purchaser;

MOTION TO APPROVE BIDDING
PROCEDURES AND SCHEDULE -15

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

51141491.1

          iv.     all parties known to the Debtor to have asserted a lien, claim, encumbrance or other interest in any of the Purchased Assets;

          v     all persons who have filed requests for notice in this Chapter 11 case.

The Debtor respectfully submits that such notice of sale of the Purchased Assets satisfies the notice requirements of the applicable Bankruptcy Rules and §363(b) of the Bankruptcy Code, and the confirmed Plan and constitutes good and sufficient notice, and that no other or further notice of this sale or the PSA is required.

## VII. SCHEDULE.

### 7.1 Auction.

The current Purchaser has a feasibility period of sixty (60) days. Some of that period has run. However, holding an Auction with potentially contingent offers is wasteful and impractical. Therefore, the Auction shall be scheduled for July 29, 2011, a date five (5) days after the feasibility period in the PSA is over. The date of the Auction will be noticed with the entry of the Order confirming the Bidding Procedures. The Proposed Bidding Procedures are Exhibit B to the PSA.

### 7.2 Court Approval of Sale Following Auction.

Once the Auction is completed and the Winning Bidder identified, the matter can be submitted to the Court without further delay and the Moving Parties propose to submit the matter to hearing and for entry of the Order Approving the Sale Free and Clear promptly following completion of the Auction.

### 7.3 Noticing.

The Notice of the current PSA, Bidding Procedures, Auction location and date, and the Sale Hearing shall be sent upon entry of the Order Approving the Bidding Procedures and Schedule.

MOTION TO APPROVE BIDDING
PROCEDURES AND SCHEDULE -16

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

51141491.1

**7.4 Conclusion.**

Based on the foregoing, the Debtor respectfully requests that this Court enter the Bidding Procedures and Schedule as submitted with this Motion.

DATED this 3rd day of May, 2011.

                                        HACKER & WILLIG, INC., P.S.

                                        */s/ Arnold M. Willig*
                                        Arnold M. Willig, WSBA #20104
                                        Attorneys for Hawks Prairie Investment, LLC
                                        Reorganized Debtor

                                        FOSTER PEPPER PLLC

                                        */s/ Dillon E. Jackson*
                                        Dillon E. Jackson, WSBA #1539
                                        Attorneys for HomeStreet Bank

MOTION TO APPROVE BIDDING
PROCEDURES AND SCHEDULE -17

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

51141491.1